**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MAIA MOSLEY, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BURNS & WILCOX, LTD.,<br><br>Defendant. | Civil Action No.:<br><br>_________________________ |

## COMPLAINT

Plaintiff Maia Mosley ("Mosley") files this Collective Action Complaint on behalf of herself and other similarly situated individuals against Defendant Burns & Wilcox, LTD. ("Burns & Wilcox"), respectfully showing as follows.

## NATURE OF THE ACTION

1. This is a collective action for unpaid overtime wages brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

2. Burns & Wilcox willfully violated the FLSA by failing to pay Mosley and other similarly situated employees for all hours worked over 40 hours per workweek at 1.5 times their regular rate of pay.

3. Mosley seeks to represent a class of similarly situated individuals consisting of all individuals Defendant Burns & Wilcox employed as broker assistants, assistant underwriters, associate brokers or associate underwriters for

at least one week during the three years preceding the filing of this complaint or so currently employs, and who worked more than 40 hours in at least one workweek ("Field Production Subordinates" or the "proposed class").

**PARTIES**

4. Mosley is an individual resident of Clarke County, Georgia.

5. Burns & Wilcox is a Michigan corporation registered and licensed to do business in the state of Georgia.

6. Burns & Wilcox may be served through its registered agent: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, GA, 30092.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over the claims brought in this action under 28 U.S.C. § 1331 because the claims raise questions of federal law.

8. Venue is proper in this division under 28 U.S.C. § 1391(b) and Local Rule 3.1(B) because at least one defendant resides in this division or a substantial part of the events or omissions giving rise to the claims occurred in this division.

9. Burns & Wilcox has consented to the jurisdiction of this Court because it is registered to do business in Georgia.

## BURNS & WILCOX IS COVERED BY THE FLSA AND EMPLOYED MOSLEY

10. Burns & Wilcox is a "Managing General Agent" that facilitates business to business sales of insurance coverage. Burns & Wilcox contracts with insurance carriers to sell insurance policies to businesses seeking insurance coverage.

11. Burns & Wilcox is an enterprise engaged in commerce or the production of goods for commerce.

12. At all times relevant to this action, Burns & Wilcox had two or more "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," as defined in 29 U.S.C. § 203(s)(1)(A).

13. Burns & Wilcox employs two or more individuals who regularly communicate across state lines using the interstate mail, internet, and telephone while performing their job duties.

14. Burns & Wilcox's employees handle and use materials that were manufactured outside the state of Georgia and traveled through interstate commerce, such as computers, computer software, paper supplies, printers, and copiers, while performing their job duties.

15. For the three years preceding the filing of this Complaint, Burns & Wilcox's annual dollar volume of sales of business transactions exceeded $500,000.00 per year.

16. At all relevant times, Burns & Wilcox employed the members of the proposed class within the meaning of the FLSA.

17. Burns & Wilcox determined the employment practices applicable to the Field Production Subordinates, including Mosley.

18. Burns & Wilcox had the authority to change the employment practices applicable to Mosley and the Field Production Subordinates.

19. Burns & Wilcox determined how Mosley and the Field Production Subordinates were paid.

20. Burns & Wilcox set the schedules for Mosley and the Field Production Subordinates.

21. Burns & Wilcox maintained the employment records, such as time and payroll records of Mosley and the Field Production Subordinates.

22. Burns & Wilcox employed Mosley and the Field Production Subordinates as defined by the FLSA at all times relevant to this action.

23. Burns & Wilcox knowingly and unlawfully misclassified Mosley and the Field Production Subordinates as exempt from the maximum weekly hour requirements of the FLSA and failed to pay them overtime wages.

## FACTS IN SUPPORT OF MOSLEY'S FLSA CLAIMS ON BEHALF OF HERSELF AND THE PROPOSED CLASS

24. Burns & Wilcox employed the members of the proposed class of Field Production Subordinates in "assistant underwriter/broker assistant" and "associate underwriter/associate broker" roles.

25. Although assistant underwriters, broker assistants, associate underwriters, and associate brokers have different job titles, they are functionally identical positions and perform identical or nearly identical job duties.

26. Burns & Wilcox hired Mosley as an "assistant underwriter/broker assistant" in or around March 2021.

27. Burns & Wilcox transitioned Mosley and the other members of the proposed class into the position "associate underwriter/associate broker" during 2022 and 2023.

28. Throughout the relevant time period, Burns & Wilcox compensated assistant underwriters, broker assistants, associate underwriters, and associate brokers by paying them a fixed weekly wage, supplemented by regular non-discretionary bonuses.

29. Assistant underwriters, brokers assistants, associate underwriters, and brokers assistants work under the direct supervision of one or more managing underwriters in the performance of their job duties.

30. Assistant underwriters, brokers assistants, associate underwriters, and brokers assistants provide clerical assistance to their managing underwriters

31. Burns & Wilcox refers to the teams consisting supervising underwriters and their subordinate assistant underwriters, broker assistants, associate underwriters and or associate brokers as "field production teams."

32. Burns & Wilcox paid Mosley and the Field Production Subordinates salaries intended to compensate them for a full-time work schedule of 40 hours per week.

33. Burns & Wilcox did not pay Mosley and the Field Production Subordinates any additional wages for their hours worked in excess of 40 per week.

34. Burns & Wilcox continuously suffered or permitted Mosley and the Field Production Subordinates to work more than 40 hours per week.

35. Burns & Wilcox operates on a volume sales model and maximizes its revenue by selling and renewing as many insurance policies held by the insurance carriers it contracts with as possible.

36. Burns & Wilcox requires its Field Production Subordinates to comply with "Company Service Standards" that include specific, rapid turnaround times and deadlines for tasks such as responding to emails and calling back client

representatives. A copy of Burns & Wilcox's Company Service Standards is attached as **Exhibit 1**.

37. Because of the volume of work and the stringency of the service standards Burns & Wilcox imposed on its Field Production Subordinates, as well as because of frequent turnover resulting in understaffing, Field Production Subordinates routinely work more than 40 hours per week.

38. For example, the standard working hours for Field Production Subordinates in Burns & Wilcox's Atlanta office were Monday through Friday 8:00 a.m. to 5:00 p.m., or a 40 hour workweek.

39. In addition to working these standard working hours, Mosley frequently worked in the evenings and into the early hours of the morning and on the weekends, working well over 40 hours in a week.

40. Burns & Wilcox was aware its Field Production Subordinates, including the members of the proposed class, were working high volumes of overtime.

41. Mosley notified her supervisors she was working significant amounts of overtime and complained about excessive work hours on several occasions.

42. Other Field Production Subordinates also notified their supervisors they were working significant overtime, and complained to Burns & Wilcox about their excessive working hours.

43. Field Production Subordinates frequently resigned from Burns & Wilcox citing excessive hours and low pay to their supervisors as their reasons for resigning.

44. The supervisors overseeing Mosley and the Field Production Subordinates were aware they were working overtime because their email traffic and activity in Burns & Wilcox's document and data management systems were accessible to the supervisors and showed Mosley and the Field Production Subordinates were working hours beyond their standard working hours.

45. Burns & Wilcox knowingly misclassified Mosley and the Field Production Subordinates, as exempt from the FLSA's requirements regarding the payment of overtime.

46. Field Production Subordinates do not exercise supervisory authority over other Burns & Wilcox employees.

47. Field Production Subordinates do not have the authority to hire other employees.

48. Field Production Subordinates do not have the authority to fire other employees.

49. Field Production Subordinates' primary job duty is the performance of clerical sales support tasks in support of their managing underwriters, such as sending form emails, data entry, and fielding basic client questions.

50. Burns & Wilcox's primary market offering is facilitating the sale and renewal of insurance policies.

51. Field Production Subordinates primarily work to assist their supervising underwriters in selling and renewing insurance policies.

52. Field Production Subordinates work to produce Burns & Wilcox's primary market offering.

53. Field Production Subordinates are production employees.

54. Field Production Subordinates are required to follow policies established by Burns & Wilcox and the guidelines provided by the insurance carriers Burns & Wilcox contracts with in performing their primary job duty.

55. Field Production Subordinates do not exercise independence or discretion as to matters of business importance for Burns & Wilcox.

56. Field Production Subordinates do not exercise independence or discretion as to matters of business importance for Burns & Wilcox's customers.

57. Burns & Wilcox awards Field Production Subordinates bi-annual performance bonuses based on the volume of sales and renewals made by their assigned field production teams.

58. If a field production team meets a certain sales and renewal thresholds or criteria the Field Production Subordinates on the field production team are entitled to the award of a bi-annual performance bonus.

59. The criteria for the award of these performance bonuses are set by Burns & Wilcox.

60. The performance bonuses are non-discretionary bonuses, which, under the FLSA, must be accounted for in the calculation of the regular rates of the Field Production Subordinates for overtime purposes.

61. Mosley and the Field Production Subordinates were awarded these non-discretionary performance bonuses during the period relevant to this action.

62. Burns & Wilcox does not require Field Production Subordinates to record their hours worked.

63. Burns & Wilcox failed to record all hours worked by Mosley and the Field Production Subordinates.

64. Burns & Wilcox knew that Mosley and the Field Production Subordinates worked more than 40 hours per week.

65. Burns & Wilcox knew that Field Production Subordinates, including Mosley and the members of the proposed class, were misclassified as exempt.

66. Burns & Wilcox knowingly and willfully violated the FLSA by failing to pay the members of the proposed class for all hours worked over 40 per week at a rate of 1.5 times their regular hourly rate.

67. Burns & Wilcox is liable to Mosley and the Field Production Subordinates for damages equal to their unpaid overtime wages and liquidated damages.

**COUNT 1: WILLFUL FAILURE TO PAY OVERTIME WAGES**

68. Mosley and the Field Production Subordinates regularly worked over 40 hours per week.

69. Burns & Wilcox was aware of the overtime hours worked by Mosley and the Field Production Subordinates.

70. Burns & Wilcox suffered or permitted Mosley and the Field Production Subordinates to work overtime hours.

71. Mosley and the Field Production Subordinates were entitled to be paid overtime wages equal to 1.5 times their regular rate for all hours worked over 40 per week.

72. Burns & Wilcox willfully misclassified Mosley and the Field Production Subordinates as exempt employees and did not pay them any additional wages whatsoever for the hours over 40 they worked each week.

73. Burns & Wilcox failed to properly calculate the regular rates of Mosely and members of the proposed class of Field Production Subordinates who were awarded non-discretionary bonuses by failing to account for the non-discretionary bonuses in its calculation of their regular hourly rates.

74. Burns & Wilcox willfully failed to pay Mosley and the Field Production Subordinates at 1.5 times their regular rates of pay for hours worked over 40 per week.

75. Burns & Wilcox is liable for their failure to pay Mosley and the Field Production Subordinates overtime wages under the FLSA.

76. Burns & Wilcox's failure to pay overtime wages in violation of the FLSA damaged Mosley and the Field Production Subordinates in an amount to be proven at trial.

77. Mosley and all other members of the proposed class are entitled to unpaid overtime wages and liquidated damages, as well as attorneys' fees and expenses in accordance with 29 U.S.C. § 216(b).

**DEMAND FOR JUDGMENT**

Mosley, on behalf of herself and others similarly situated respectfully requests that the Court:

(1) Approve and facilitate publication of notice of this collective action to all individuals within the proposed class informing those individuals of their right to join this action.

(2) Enter judgment in favor of Mosley and the other members of the proposed class that Burns & Wilcox violated their rights under the FLSA;

(3) Enter judgment in favor of Mosley and the other members of the proposed class that Burns & Wilcox's violations of their rights under the FLSA were willful;

(4) Award Mosley and the other members of the proposed class all unpaid overtime wages for a period of three years;

(5) Award Mosley and the other members of the proposed class liquidated damages in an amount equal to their unpaid wages;

(6) Award Mosley and the other members of the proposed class their reasonable attorney's fees, costs, and expenses in accordance with 29 U.S.C. § 216(b); and

(7) Award all other relief to which Mosley and the other members of the proposed class may be entitled.

**DEMAND FOR TRIAL BY JURY**

Plaintiff requests a trial by jury under Fed. R. Civ. P. 38.

Respectfully submitted, Thursday, May 15, 2025.

***/s/ John L. Mays***

**PARKS, CHESIN & WALBERT, P.C.**
1335 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404-873-8000
jmays@pcwlawfirm.com
acoffman@pcwlawfirm.com
edrew@pcwlawfirm.com

John L. Mays
Georgia Bar No. 986574
Andrew Y. Coffman
Georgia Bar No. 173115
Evan P. Drew
Georgia Bar No. 747996
*Counsel for Plaintiff*