IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MAIA MOSLEY, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BURNS AND WILCOX, LTD.,<br><br>Defendant. | CIVIL ACTION NO.<br>1:25-cv-2717-AT |

**ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment, Or, in the Alternative, to Decertify Collective Action [Doc. 50] and Defendant's related Motion to Stay. [Doc. 52]. For the reasons that follow, the Motion for Summary Judgment is **DENIED**, and the Motion to Stay is **DENIED as moot**.

## I. Background

Plaintiff Maia Mosley ("Plaintiff") filed this collective action on May 15, 2025, on behalf of herself and other similarly situated employees who worked as assistant brokers, associate brokers, assistant underwriters, or associate underwriters (collectively, "Field Production Subordinates") for Defendant Burns & Wilcox, Ltd. ("Defendant" or "B&W") within the past three years and who were

not paid for hours in excess of 40 hours per week. (Compl., Doc. 1 ¶ 3). Plaintiff alleges that Defendant violated Section 216(b) of the Fair Labor Standards Act ("FLSA") by failing to pay its Field Production Subordinates appropriate overtime compensation at a rate of one-and-a-half times their regular rates of pay for all hours worked in excess of 40 hours per week. (*Id.* ¶¶ 33–45).

The Court granted conditional certification of the collective on September 10, 2026, but delayed approval of Plaintiff's proposed Notice and Notice Plan until after the Court could hold a teleconference with the parties regarding those issues. (*See* Doc. 48). All Notice and Notice Plan issues have now been resolved and the Notice to the collective is ready to be disseminated. However, before resolution of the Notice issues was reached, Defendant filed the instant Motion for Summary Judgment on September 28, 2026. [Doc. 50]. Nine days later, on October 7, Defendant further requested that the Court stay this action in its entirety, including the issuance of the Notice, until after the summary judgment motion was resolved. [Doc. 52].[1]

In the Motion at hand, Defendant seeks summary judgment on the grounds that Plaintiff failed to timely file a written consent to commence her claim under the FLSA, as required by 29 U.S.C. § 216(b) and § 256. Therefore, Defendant asserts Plaintiff's claim is now time-barred, and the entire Complaint should thus be dismissed and the collective action should not proceed. In the alternative, but

[1] On October 23, 2026, Defendant also separately moved to transfer this action to the Eastern District of Michigan. (Doc. 59). The Court does not address the motion to transfer venue in this Order, as it has not yet been fully briefed or considered.

for the same reasons, Defendant argues that the collective action should be decertified because Plaintiff cannot properly represent the collective given her time-barred claims. [Doc. 50-1].

## II. Discussion

The FLSA provides that "[n]o employee shall be a party plaintiff to any such [FLSA] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). An action brought under the FLSA must be commenced within two years of the claim accruing, unless an employer's violations are deemed willful, in which case the action must be brought within three years. 29 U.S.C. § 255(a). Plaintiff alleges a willful violation of the overtime provisions of the FLSA here, so the three-year statute of limitations applies. (*See* Doc. 1 ¶¶ 2, 66-77). Because Plaintiff's FLSA claim accrued on September 22, 2023 (the date of her last paycheck), she thus had until September 22, 2026 to commence this action under the FLSA.

Section 256 of the FLSA reiterates the "written consent" requirement set forth in Section 216(b), and further provides that a collective action is considered to be "commenced" in the case of any individual claimant —

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256(a) – (b).

Here, Maia Mosley is the named Plaintiff in the Complaint, which was filed on May 15, 2025. (Doc. 1). However, Ms. Mosley did not file a written consent to become a party plaintiff along with her Complaint. Over the course of several months following the filing of this lawsuit, Plaintiff's counsel filed written consent forms for several other opt-in plaintiffs, each entitled "Consent to Join" and specifying consent to join this particular lawsuit (*see* Docs. 39, 41, 42, 43). However, no similar written "Consent to Join" form for Ms. Mosley was ever filed. After the statute of limitations ran on September 22, 2026, Defendant acted quickly to take advantage of Plaintiff's oversight in this regard, filing the instant summary judgment motion on September 28, 2026. [Doc. 50]. Defendant contends that Plaintiff's failure to file a written consent means that her claim was never commenced and is now time-barred. (Doc. 50-1 at 5-12). Accordingly, Defendant argues the Complaint should be dismissed in its entirety; alternatively, Defendant asks the Court to decertify the collective and dismiss the opt-in plaintiffs without prejudice.

Plaintiff argues that her signed fee agreement that was submitted as an attachment to her Motion for Conditional Certification (Doc. 44-14) on February 20, 2026 should be treated as a written consent sufficient to satisfy the requirements of Section 256 of the FLSA. Ms. Mosley's fee agreement with Plaintiff's counsel was signed on February 19, 2025, one day before she submitted a "Consent to Join as Party-Plaintiff" in a separate FLSA action that Plaintiff's counsel in this case previously brought against Defendant on behalf of another

plaintiff, Gilda L. Guzman. *See Guzman v. Burns & Wilcox, Ltd.*, Case. No. 1:24-cv-01272-AT (N.D. Ga. Mar. 25, 2024). Ultimately, the Court did not permit *Guzman* to proceed as a collective action, and so Ms. Mosley was unable to bring her FLSA claim in that case.[2] Consequently, Ms. Mosley filed the instant collective action on May 15, 2025, approximately two weeks after the Court denied the request to convert *Guzman* into a collective action.

Defendant argues that the Court should refuse to treat the signed fee agreement as a valid written consent, because it does not specify that Ms. Mosley is consenting to join ***this particular*** lawsuit. Although one might think it obvious that a named plaintiff must have consented to bring her own lawsuit simply by virtue of filing a collective action complaint, courts have cautioned that the FLSA's "written consent" requirements even for named plaintiffs must be strictly followed. The "plain language" of 29 U.S.C. § 256(a) "unambiguously" requires named plaintiffs to file written consents. *Frye v. Baptist Mem. Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012). *See also, e.g.*, *In re Food Lion, Inc.*, 151 F.3d 1029 (4th Cir. 1998) (unpublished table decision) (explaining that, "[r]edundant though it may seem to require consents from the named plaintiffs in a class action," the filing of a collective action under 29 U.S.C. § 216(b) "renders consents necessary"); *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) ("The statute is unambiguous: if you haven't given your written consent to join the suit, or if you

[2] The *Guzman* case was closed on June 9, 2025 after Ms. Guzman settled with Defendant on an individual basis and the Court approved the settlement.

have but it hasn't been filed with the court, you're not a party. It makes no difference that you are named in the complaint, for you might have been named without your consent.").

Thus, the Court agrees with Defendant (and no one disputes) that the filing of a collective action complaint alone does not satisfy the FLSA's "written consent" requirement. The question is whether Plaintiff's signed fee agreement does. Defendant argues it doesn't, in part because the fee agreement was signed several months before it became clear that Plaintiff would not be permitted to join the *Guzman* action and thus likely before Plaintiff had an inkling she'd have to file her own collective action at all. Defendant likens this scenario to one mentioned in *Harkins*, in which a named plaintiff in a collective action "might have been named without [her] consent." In effect, Defendant argues that Plaintiff's counsel could have obtained Ms. Mosley's consent to join the *Guzman* action through her signed fee agreement, and counsel could have then (possibly nefariously) filed this separate lawsuit three months later without Ms. Mosley's knowledge or consent. [Doc. 56 at 3]; *see also Harkins*, 385 F.3d at 1101. But any notion that this case was filed without Ms. Mosley's knowledge or consent is entirely speculative and inconsistent with the record, as discussed in more detail below. Defendant also cites to a District of Connecticut case for the proposition that the written consent requirement "gives notice [to employer defendants in FLSA cases] of who is suing them and confirms that the employee herself agreed to participate." [Doc. 56 at 3] (citing *D'Antuono v. C & G of Groton, Inc.*, 2012 WL 1188197, at *2 (D. Conn. Apr.

9, 2012)). Defendant asserts that because the fee agreement does not refer to the particular lawsuit Plaintiff is consenting to join, it does not fulfill the notice purpose of the written consent requirement.

However, the FLSA does not specify the form of written consent that is required. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 676 (6th Cir. 2012); *see also Mendez v. The Radec Corp.*, 260 F.R.D. 38, 52 (W.D.N.Y. 2009) ("The statute itself does not mandate any particular form [of written consent], and in general, all that is required is a signed statement indicating the plaintiff's intent, and consent, to participate as a plaintiff in the collective action."); *Contrera v. Langer*, 290 F. Supp. 3d 269, 278 (S.D.N.Y. 2018) ("29 U.S.C. § 256(a) expansively requires only a 'written consent to become a party plaintiff' but does not specify any other requirements for that consent."). Thus, courts "have generally not taken a strict approach with regard to the *form* of the written consent, at least with respect to named plaintiffs." *Mendez*, 260 F.R.D. at 52. Indeed, the Supreme Court has indicated that the written consent requirement would be satisfied simply by a party plaintiff individually signing her interrogatories. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 736 n.11 (1981) (noting that, "[e]ven if this [written consent] requirement [in § 216(b)] were to apply to petitioners' suit, a nonclass action, it was satisfied when petitioners individually signed at least two sets of interrogatories.").

The Eleventh Circuit has also found in a related context that, where a consent form contains broad language indicating the plaintiff's consent to have ***all***

of her FLSA claims adjudicated, her consent form is "broad enough to cover not only the claims then contained in the complaint but also any that might be added to it during the litigation." *Prickett v. Dekalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003). Although *Prickett* dealt with the issue of whether opt-in plaintiffs are required to file new consent forms upon the filing of an amended complaint, the same rationale supports a finding that Plaintiff's fee agreement, which provided express consent for her claims to "be part of a collective under the Fair Labor Standards Act[,]" contains broad enough language to cover not only the claims she was thwarted from bringing in the *Guzman* action but also the claims she brought here, three days after the Court denied Ms. Guzman's request to convert her case into a collective action. Section 256 contains no requirement that the plaintiff's written consent expressly refer to the particular lawsuit in which it is being filed; it requires only that the plaintiff's "written consent to become a party plaintiff" be "filed in the court in which the action was commenced." 29 U.S.C. § 256. Plaintiff has met that requirement here.

Further, in contrast to the *Harkins* case cited by Defendant, there could be no colorable concern here that Plaintiff was named without her consent. Ms. Mosley has already sat for her deposition in this case, and when she was asked whether she had "filed a complaint . . . in the United States District Court for the Northern District of Georgia on behalf of yourself and other similarly situated people," she responded, "That is correct." (Doc. 49, Mosley Dep. 119:11-16). Indeed, in the District of Connecticut case Defendant cites to support the argument that

the fee agreement fails to demonstrate Plaintiff's consent, the court found that "while participation in a deposition is not dispositive or sufficient for the notice requirement," the fact that the named plaintiff there "ha[d] already willingly undergone a lengthy deposition [is] relevant in the evaluation of whether she intended to participate in this case." *D'Antuono*, 2012 WL 1188197, at *4. The *D'Antuono* court's reasoning is persuasive and contradicts Defendant's arguments in other ways as well. The named plaintiff in *D'Antuono* had submitted a signed affidavit as an exhibit to the plaintiffs' opposition to a motion to dismiss, in which she stated in relevant part that she "could not afford to undertake this litigation and pursue my rights if I had the risk of paying the Defendants' costs if I lost at arbitration." *Id.* at *3. The court found that this language "manifest[ed] a clear intent to be a party plaintiff," particularly when coupled with the fact that she had willingly sat for a lengthy deposition. *Id.* at *4. Taking these considerations into account, the *D'Antuono* court ultimately found that "the two potential purposes of the notice requirement — ensuring both that the Defendants are aware of all potential plaintiffs and that each individual plaintiff intends to participate in the lawsuit —are both satisfied." *Id.*[3]

Similar to *Harkins*, and more directly on point, the Second Circuit held 75 years ago that a "general retainer" signed by a plaintiff authorizing a law firm "to

[3] Also running counter to Defendant's position here, the *D'Antuono* court noted that, to the extent the purpose of the consent requirement in § 216(b) "is to put Defendants on notice," many courts have noted that purpose "is somewhat redundant with regard to named plaintiffs." *Id.* at *2.

prosecute by suit or otherwise the signer's claim for overtime wages and liquidated damages under the Act" was sufficient to constitute a "written consent" within the meaning of the FLSA. *Brown v. Dunbar & Sullivan Dredging Co.*, 189 F.2d 871, 873–74 (2d Cir. 1951). The court there rejected the precise argument Defendant makes here — that "under the statute [] the consent must refer explicitly to the action in which it is to be filed" — reasoning that "[t]here is nothing in either the words or the circumstances to require so strict and purely formalistic a reading." *Id.* at 874. The court went on to explain that, to the extent the purpose of the FLSA's consent requirement was to "prevent the assertion of surprise claims by unnamed employees at a time when the statute of limitations would otherwise have run[,]" that purpose was "fully served" by the filing of opt-in plaintiffs' retainer agreements as party consents and it was "not necessary to press [the Act's] construction to a point where a legally adequate grant of power to proceed under the Act is held insufficient for some want of special detail not pertinent to the legislative purpose." *Id.*

The same holds true here. Defendant cannot plausibly assert that it was surprised by Ms. Mosley's FLSA claims after she attempted to join the *Guzman* action as an opt-in plaintiff, initiated her own collective action more than 18 months ago after the Court refused to convert *Guzman* into a collective action, engaged in discovery here, sat for a deposition, and moved for and won conditional certification, all before the statute of limitations passed. Therefore, the notice purpose of the "written consent" requirement has been satisfied. Additionally, the

*Brown* case underscores the more pertinent point that a general retainer agreement signed by a party plaintiff can serve to operate as a written consent within the meaning of Sections 216(b) and 256, and that requiring Plaintiff to have filed her fee agreement explicitly as a "consent to join" or to specify the particular lawsuit in which it was to be filed in order to commence the action would be a "strict and purely formalistic" construction not supported by either the plain language or the purpose of the statute. *Brown*, 189 F.2d at 874.

For these reasons, the Court finds that Plaintiff's filing of her signed fee agreement in support of her Motion for Conditional Certification (Doc. 44-14) is sufficient to satisfy the "written consent" requirements of § 216(b) and § 256 of the FLSA. Plaintiff filed the fee agreement well before the statute of limitations ran in September 2026. As Defendant's Motion for Summary Judgment depends on the assertion that Plaintiff's claim is time-barred, it is accordingly **DENIED**.

Because the summary judgment motion is denied, the request to stay the action pending its resolution is now moot. Further, the Court notes that the Notice process has now been delayed by nearly two months due to the parties' disputes over the form of Notice and Notice Process as well as the need to resolve the instant summary judgment motion before proceeding. Notwithstanding Defendant's pending Motion to Transfer Venue (Doc. 59), the Court finds no good reason to further delay the Notice process. The statute of limitations clock is running on the claims of many collective members who may not yet have notice of this action. Accordingly, the Court will **ORDER** the dissemination of the Notice in the form

attached to this Order as Exhibit A, and in accordance with the Notice Plan outlined in the Conclusion Section below.

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 50] is **DENIED**. Defendant's related Motion to Stay [Doc. 52] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Court-approved Notice attached to this Order as **Exhibit A** shall be disseminated to the Collective Members without further delay, in accordance with the approved Notice Plan outlined below.

Within ten workdays of the date of this Order, Defendants **SHALL** deliver to Plaintiffs' counsel an electronic spreadsheet in a readily usable format (XLSX or CSV) containing the names, last known mailing addresses, last known personal email addresses, last known mobile telephone numbers, and dates of employment of all individuals in the collective group.

Within ten workdays from the date of delivery by Defendants of the collective group list to Plaintiffs' counsel, Plaintiffs' counsel shall cause to be mailed, at their expense, the **Court-approved** Notice and Consent Forms to the putative collective members by first-class mail, and shall include a self-addressed, stamped envelope.

Plaintiffs' counsel may also send the Notice and Consent Forms to the putative collective members by email. Plaintiffs' counsel may make the content of

the Notice and Consent Form available on a website with the option to sign the Consent Form electronically.

Plaintiffs' counsel must update the dates in all forms to reflect the correct dates. In the event that any mailed Notice and Consent Form is returned to Plaintiffs' counsel as undeliverable, Plaintiffs' counsel will be given an additional 30 days to transmit the Notice and Consent Forms and permission to email the putative collective members to obtain their accurate mailing addresses.

If ***both*** the mailed Notice and Consent Form and the Emailed Notice are returned as undeliverable for any particular putative Collective Member, ***or*** if Plaintiffs' counsel receives no email response within three days from any Collective Member whose mailed Notice and Consent Form was returned as undeliverable and to whom a follow-up email was sent (as described in the paragraph above), Plaintiffs' counsel will be given an additional 30 days to transmit the Notice and Consent Forms and permission to send a text message to that putative Collective Member to obtain their accurate mailing address and/or email address.

Within three days of transmitting the Notices, Plaintiffs' counsel shall notify the Court by filing a notice on the docket indicating the date of transmittal of the Notices.

No sooner than 30 days after initially transmitting the Notices, Plaintiffs' counsel shall send one reminder Notice to the putative collective members who have not responded. Plaintiffs' counsel may do so by transmitting the Reminder Notice via first-class mail and sending an electronic Reminder Notice via email.

The putative collective members shall have 60 days to return their signed Consent Form to Plaintiffs' counsel ("Notice Period"). This deadline will be extended by 30 days in the event that Plaintiffs' counsel receives undelivered Notices.

No later than 90 days from the date of this Order, the Parties **SHALL** file a joint proposed scheduling order governing the second phase of discovery and deadlines for dispositive motions. In the event the pending Motion to Transfer is ultimately granted by the undersigned, this deadline shall automatically be terminated so that the transferee court may manage its own case schedule.

**IT IS SO ORDERED** this 6th day of November, 2026.

**Honorable Amy Totenberg**
**United States District Judge**

# EXHIBIT A

**NOTICE OF LAWSUIT AND YOUR OPPORTUNITY TO JOIN**

TO: Current and Former Assistant Brokers, Associate Brokers, Assistant Underwriters and Associate Underwriters Who Worked for Burns & Wilcox, Ltd. three years prior to the date the Court approves this Notice

FR: Parks, Chesin & Walbert, P.C., Counsel for Plaintiffs, as authorized by the United States District Court for the Northern District of Georgia

RE: Your opportunity to join *Maia Mosley v. Burns and Wilcox, Ltd.*, Civ. No 1:25-cv-02717, N.D. Ga.

**1. WHAT IS THIS NOTICE?**

The purpose of this notice is to inform you of a lawsuit you may be able to join, to advise you of your rights and how they may be affected by the lawsuit, and to instruct you on the procedure for joining and participating in the lawsuit, if you wish to join. **The Court has made no decision in this case about the merits of Plaintiffs' claims or Defendant's defenses.**

**2. WHAT IS THE LAWSUIT ABOUT?**

The Plaintiffs in the lawsuit allege that Burns & Wilcox misclassified current and former Assistant Brokers, Associate Brokers, Assistant Underwriters, and Associate Underwriters as "exempt" from the Fair Labor Standards Act ("FLSA") and willfully failed to pay them for hours worked over 40 per week in violation of the FLSA, 29 U.S.C. § 201 *et seq*. Burns & Wilcox has denied these allegations. It is Burns & Wilcox's position that its Assistant Brokers, Associate Brokers, Assistant Underwriters, and Associate Underwriters received all compensation owed to them. Burns & Wilcox also claims that it acted in good faith at all times and that it did not violate the FLSA. The Court has not made any decisions about the merits of any claims or defenses.

**3. WHY ARE YOU GETTING THIS NOTICE?**

Burns & Wilcox's records indicate that you may be a current or former Assistant Broker, Associate Broker, Assistant Underwriter, or Associate Underwriter who currently or in the past was classified as exempt and potentially not paid overtime wages.

**4. EFFECT OF JOINING THIS LAWSUIT**

If you choose to join the lawsuit, you will become a party. You will be bound by any judgment, whether favorable or unfavorable, on all issues that are decided by the Court. You may be required to provide testimony as well as any relevant documents. The Plaintiffs in this lawsuit are seeking to recover unpaid wages, plus an additional amount equal to their alleged unpaid wages (called "liquidated damages"), and Plaintiffs' counsel will also seek to obtain attorney's fees and costs from Defendant if Plaintiffs prevail in this case. The collective action claims in this lawsuit do not include any claims other than claims for unpaid wages.

## 5. HOW TO JOIN THE LAWSUIT

You may join this case by submitting the attached *Consent to Join Form* ("Consent Form") in any of the following ways:

*Online*: Complete and submit your Consent Form online at:

https://fs2.formsite.com/pcwlawfirm/BurnsandWilcoxLawsuit/index

*Mail*: Mail your completed Consent Form to:

PARKS, CHESIN & WALBERT, P.C.
1355 Peachtree Street NE, Suite 2000
Atlanta, GA 30309

*Email*: Email your completed Consent Form to:

jmays@pcwlawfirm.com

If you do not submit your Consent Form by **[ DATE ]**, you may not be able to participate.

## 6. YOUR LEGAL REPRESENTATION IF YOU JOIN

If you choose to join this lawsuit by submitting the Consent Form included with this notice, you will be represented by the law firm of Parks, Chesin & Walbert, P.C. ("Plaintiffs' Counsel"). However, you are not required to join this lawsuit, and choosing not to join will not prevent you from retaining an attorney of your choice to represent you in an individual claim under the FLSA. Plaintiffs' Counsel is being paid on a contingency fee basis, which means that, if there is no recovery by the Plaintiffs, you will not be responsible for any of Plaintiffs' Counsel's costs or attorney fees. If you join this action by signing and returning the Consent Form, you are agreeing to be represented by Plaintiffs' Counsel, subject to the terms of their contingency fee agreement, which provides that their fees, whether negotiated as part of a settlement or awarded by the Court, will be the greater of (1) 40% of the gross amount of any settlement, offer of settlement, verdict, judgment, or award from or against any adverse or collateral party; or (2) the actual fees incurred at the current hourly rates of Plaintiffs' Counsel's attorneys and paralegals. The Court will determine the reasonableness of Plaintiffs' Counsel's fees, and any settlement agreement reached between the parties must be approved by the Court. If you would like more information about this notice or the lawsuit, please contact Plaintiffs' Counsel by email at jmays@pcwlawfirm.com.

## 7. ACTION TO TAKE TO STAY OUT OF THE LAWSUIT

If you do not wish to be part of the lawsuit, **you do not need to do anything**. If you do not join this lawsuit, you will not be affected by the result of the lawsuit, and your decision will not affect your right to bring a similar lawsuit on your own.